UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION


STACY JONES,
#7580355608                                                                          PLAINTIFF

V.                              4:16CV00593 BSM/JTR

MATTHEW BRIGGS, Major,
Pulaski County Regional Detention Facility, et al.                  DEFENDANTS


## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States Chief District Judge Brian S. Miller. Any party may file written objections to this Recommendation. Objections must be specific and include the factual or legal basis for disagreeing with the Recommendation. An objection to a factual finding must specifically identify the finding of fact believed to be wrong and describe the evidence that supports that belief.

An original and one copy of the objections must be received by the Clerk of this Court within fourteen (14) days of this Recommendation. If no objections are filed, Judge Miller can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may also waive any right to appeal questions of fact.

## I. Introduction

Stacy Jones ("Jones") is a prisoner in the Milwaukee County House of Correction. He has filed this *pro se* § 1983 action alleging that, while he was a pretrial detainee in the Pulaski County Regional Detention Facility ("PCRDF"), Defendants Chief Mike Sylvester ("Sylvester"), Major Matthew Briggs ("Briggs"), Lieutenant Jackson Bennett ("Bennett"), Lieutenant Vivalon Nelson ("Nelson"), and Classification Representative Sylvia Wilson ("Wilson") retaliated against him for seeking medical care and subjected him to inhumane conditions of confinement. *Docs. 2, 6, 7, & 8.* Jones brings these claims against Defendants in their individual capacities only.[1] *Doc. 15.*

Defendants have filed a Motion for Summary Judgment on the merits of Jones's claims, two Briefs in Support, two Statements of Undisputed Facts, and a Reply. *Docs. 59, 60, 61, 71, 78, & 79.* Jones has filed several Responses, a Statement of Disputed Facts, and Affidavits. *Docs. 64, 68, 69, 70, 72, 73, 74, & 75.*

Before addressing the merits of the Motion for Summary Judgment, the Court will summarize the relevant facts giving rise to Jones's retaliation and inhumane conditions of confinement claims:[2]

---

[1] The Court has previously: (1) dismissed, without prejudice, all claims Jones raised against Defendants in their official capacities; (2) dismissed, without prejudice, Jones's claims against the PCRDF; and (3) dismissed, with prejudice, Jones's inadequate medical care claim against Defendant Dr. Johnson. *Docs. 15 & 80.*

[2] Summary judgment is appropriate when the record, viewed in a light most favorable to

1. On May 31, 2016, Jones was booked in the PCRDF and assigned to general population in S-Unit. Defendants concede, for purposes of summary judgment, that Jones was "a pretrial detainee at all times during his incarceration at the PCRDF." *Doc. 60 at Ex. 1-1; Doc. 78 at Ex. 1.*

2. From June 13 to July 23, 2016, Jones filed four grievances complaining about what he believed to be inadequate medical care for chest pains. Those grievances were denied by non-parties. *Doc. 3 at 9; Doc. 60 at Ex. 2-2; Doc. 68 at 19.*

3. On July 23, 2016, the air conditioning in S-Unit stopped working. Sometime in the afternoon, Jones told a non-party guard that the heat was causing him to have chest pains. Around 2:15 p.m., the detainees in S-Unit refused to lock down in their cells in protest of the hot conditions. The parties disagree as to whether Jones participated in that protest. Briggs ordered the Special Emergency Response Team ("SERT") to S-Unit. Two minutes after the SERT arrived at S-Unit, the detainees stopped their protest and entered their lock down cells without incident.

---

the nonmoving party, demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011).

The SERT identified Jones as one of the two "ring leaders" of the protest, removed him from S-Unit, and placed him in administrative segregation cell U-406. Briggs and Sylvester ordered that Jones: (a) remain in his administrative segregation cell twenty-three hours a day; and (b) be placed in "full restraints" with a "black box" when he was allowed out of his administrative segregation cell for one hour each day to shower, make phone calls, and have visitation.³ *Doc. 2; Doc. 60 at Exs. 1-2, 1-3; Doc. 78 at Ex. 1-4.*

4. Later that day, a non-party member of the SERT filed an incident report accusing Jones of disobeying orders and being one of the "ring leaders of the refusal to lock down" in S-Unit. *Doc. 71 at Ex. 1; Doc. 78 at Ex. 1-4.*

5. While Jones was in cell U-406, he complained to Bennett that his toilet, which contained feces and urine, would not flush. Jones also raised that complaint in two grievances, which were denied by a non-party. *Doc. 3 at 1 & 7; Doc. 7; Doc. 60 at Ex. 2-3.*

6. On July 27, 2016, the Classification Board, which included Wilson, held a hearing to review the incident report filed against Jones. At the conclusion of

---

³ The parties agree that "full restraints" are handcuffs, leg shackles, a belly chain, and a tether that connects all three. Neither party has explained the "black box." In *Moody v. Proctor*, 986 F.2d 239, 240 n.3 (8th Cir. 1993), the Court explained that the "black box is applied over the chain and lock area of conventional handcuffs to form a rigid link between the two wristlets." The Court also concluded that, "although the black box causes discomfort, its use is penologically justified" to prevent escape and reduce the number of escorting guards. *Id.* at 241.

4

that hearing, the Classification Board determined that: (a) Jones had disobeyed orders and was one of the "ring leaders" of the July 23, 2016 disturbance in S-Unit; and (b) when Jones was allowed to leave his cell for one hour each day, he should be placed in full restraints, with a black box, the highest security requirement at the PCRDF. Nelson affirmed both decisions on appeal. *Doc. 3; Doc. 78 at Exs. 1, 1-4, 1-5, 1-6.*

7. On July 29, 2016, Jones was transferred from cell U-406 to cell T-402 in administrative segregation. Jones does *not* allege that the toilet in T-402 was malfunctioning or that he had insufficient toilet paper while held in that cell. *Doc. 60 at Ex. 1-3.*

8. On August 3, 12, and 19, 2016, the Classification Board reviewed and reaffirmed their earlier decision that Jones should remain in administrative segregation and be placed in full restraints, with a black box, whenever he left his cell. *Doc. 78 at Exs. 1, 1-4.*

9. On August 24, 2016, the Classification Board noted that Jones was "working his way down" from the highest security status. Thus, they allowed him to be placed in full restraints, without the black box, whenever he left his administrative segregation cell. The Classification Board reviewed and reaffirmed that decision during their August 31 and September 8, 2016 meetings. *Doc. 78 at Exs. 1, 1-4.*

10. On September 14, 2016, Jones was released from the PCRDF. *Doc. 78 at Ex. 1-8.*

## II. Discussion

**A. Retaliation Claim**

Jones alleges that Defendants placed him in administrative segregation to retaliate against him for seeking medical treatment for chest pains.[4] To proceed to trial on that claim, Jones must have evidence demonstrating that he engaged in constitutionally protected activity and that retaliation was the "actual motivating factor" for his placement in administrative segregation. *See Beaulieu v. Ludeman,* 690 F.3d 1017, 1025 (8th Cir. 2012); *Lewis v. Jacks,* 486 F.3d 1026, 1028 (8th Cir. 2007).

Clearly, Jones engaged in constitutionally protected activity when he requested medical treatment for chest pains and filed grievances challenging the medical care he received for that condition. *See Lewis*, 486 F.3d at 1029. However, a retaliatory discipline claim fails, *as matter of law*, if there is "some evidence the inmate actually committed a rule violation." *Sanders v. Hobbs,* 773 F.3d 186, 190 (8th Cir. 2014); *Hartsfield v. Nichols*, 511 F.3d 826, 829 (8th Cir. 2008). The parties

---

[4] Specifically, Jones alleges that: (1) Sylvester and Briggs ordered that he be placed in administrative segregation; (2) Bennett carried out those orders; (3) Wilson, as member of the Classification Board, found him guilty of the charges made in the incident report; and (4) Nelson denied his appeal challenging the Classification Board's findings.

dispute whether Jones participated in the July 23, 2016 protest in S-Unit, which was the basis for him being placed in administrative segregation. However, that factual dispute is immaterial to Jones's retaliation claim because a "report from a correctional officer, *even if disputed by the inmate and supported by no other evidence,* legally suffices as some evidence upon which to base a prison disciplinary violation, if the violation is found by an impartial decision maker." *Sanders,* 773 F.3d at 190 (emphasis added); *see also Henderson v. Baird,* 29 F.3d 464, 469 (8th Cir. 1994) (explaining that a disciplinary decision made by an impartial decision maker and supported by some evidence "essentially checkmates" a retaliation claim).

Here, Jones's confinement in administrative segregation is supported by the incident report filed by a *non-party* member of the SERT, *who personally observed the incident* and concluded that Jones disobeyed orders and was a "ring leaders" of the uprising in S-Unit. After reviewing that report and holding a hearing, Wilson (as a member of the Classification Board) and Nelson (on appeal) found that there was some evidence to support those charges. That finding "essentially checkmates" Jones's retaliation claim against Sylvester, Briggs, and Bennett.

Although Jones speculates that Wilson and Nelson found him guilty for retaliatory reasons, he has offered *no evidence* to support that conclusory accusation. *See Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006) (holding that a prisoner

7

"carries a substantial burden to prove that retaliation was the actual motivating factor" for an adverse action); *Cooper v. Schriro*, 189 F.3d 781,784 (8th Cir. 1999) (holding that "speculative and conclusory allegations cannot support a retaliation claim"). In fact, there is *no evidence* that either Wilson or Nelson was aware that Jones sought medical care for chest pains or that he filed grievances complaining about the medical care he received for that condition. *See Haynes v. Stephenson*, 588 F.3d 1152, 1156 (8th Cir. 2009) (explaining that a prisoner must demonstrate that "but for a retaliatory motive," the defendant would not have taken the disciplinary action); *Lewis*, 486 F.3d at 1029 (holding that, to avoid summary judgment, a prisoner "must submit affirmative evidence of a retaliatory motive").

Accordingly, the Court concludes that Defendants are entitled to summary judgment, and that Jones's retaliation claim against them should be dismissed, with prejudice.

**B.     Inhumane Conditions of Confinement Claims**

Jones alleges that Defendants subjected him to inhumane conditions of confinement while he was administrative segregation by: (1) failing to repair his toilet and provide him with toilet paper; and (2) placing him in full restraints when he left his cell for one hour each day.

The Supreme Court has clarified that, because the "Constitution does not mandate comfortable prisons," only "extreme deprivations" that deny "the minimal

civilized measure of life's necessities are sufficiently grave to form the basis" of an Eighth Amendment violation. *Hudson v. McMillian,* 503 U.S. 1, 9 (1992); *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Thus, to proceed to trial on his inhumane conditions of confinement claims, Jones must have evidence demonstrating that: (1) objectively, he was subjected to conditions that created a substantial risk of serious harm to his health or safety; and (2) subjectively, Defendants were deliberately indifferent to the risk of harm posed by those conditions.[5] *Davis v. Oregon Cnty., Mo.,* 607 F.3d 543, 548-49 (8th Cir. 2010); *Butler v. Fletcher,* 465 F.3d 340, 345 (8th Cir. 2006).

1. **Broken Toilet and Lack of Toilet Paper**

Jones alleges that Defendants subjected him to inhumane conditions of confinement for the six days (July 23 to 29, 2016) that he was held in cell U-406 because he did not receive "any" toilet paper and the toilet, which was "full of feces and urine," would not flush.[6] *Docs. 2, 6, 7 at 3.* Jones has not produced *any evidence*

---

[5] Currently, the Eighth Circuit applies the same deliberate indifference standard to inhumane conditions of confinement claims brought by pretrial detainees, under the Fourteenth Amendment, and convicted prisoners, under the Eighth Amendment. *Butler,* 465 F.3d at 345. In *Ingram v. Cole Cnty,* 846 F.3d 282 (8th Cir. 2017), the Eighth Circuit heard arguments, *en banc*, on whether the deliberate indifference standard still applies to conditions of confinement claims asserted by pretrial detainees, based on the Court's holding in *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015). As of the date of this Recommended Disposition, no opinion has been entered in the *Ingram* case. However, even if the Eighth Circuit decides to extend *Kingsley* to conditions of confinement claims asserted by pretrial detainees, Defendants in this case would be entitled to qualified immunity from a retroactive application of that *new legal standard*.

[6] Defendants claim that the toilet in cell U-406 was *not* broken, and that all detainees in administrative segregation receive toilet paper in "quarter roll increments on an as needed basis."

demonstrating that Briggs, Sylvester, Nelson, or Wilson was subjectively aware of these alleged conditions. *See Corwin v. City of Indep., Mo.,* 829 F.3d 695, 699 (8th Cir. 2016) (explaining that deliberate indifference requires subjective knowledge and that a negligent failure to be aware of a potential constitutional violation is insufficient).

In contrast, Jones alleges that he told Bennett about the broken toilet and lack of toilet paper in cell U-406. Accepting those facts as true, Jones's claim against Bennett still fails because there is *no evidence* that Jones suffered *any harm* as a result of not having toilet paper or being able to flush his toilet *for six days. See Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996) (finding no constitutional violation where a prisoner failed to demonstrate that he was actually harmed by unsanitary conditions). Additionally, the Eighth Circuit has held that exposure, *for a limited duration*, to unsanitary conditions does not rise to the level of a constitutional violation. *Tokar v. Armontrout,* 97 F.3d 1078, 1082 (8th Cir. 1996) (holding that unsanitary conditions of confinement may "be tolerable for a few days and intolerably cruel for weeks or months").

In *Smith,* the Court held there was no constitutional violation when a detainee was exposed to "raw sewage" from an overflowing toilet for four days. *Smith,* 87

---

*Doc. 60, Exs. 1, 1-5, & 1-6.* However, at summary judgment, the Court must construe these disputed facts in Jones's favor.

F.3d at 269. In *Goldman v. Forbus*, 17 F. App'x 487, 489 (8th Cir. 2001) (unpublished opinion), the Court held there was no constitutional violation when a detainee was "sprinkled with urine" for six days while sleeping on the floor near a toilet. Similarly, the Court found no constitutional violation when a detainee, who did not have any toilet paper for three to four days each week, was allowed to shower daily. *Stickley v. Byrd*, 703 F.3d 421, 423 (8th Cir. 2013). In this case, unlike in *Smith* and *Goldman*, Jones does *not* allege that he ever came into contact with feces or urine from the broken toilet in cell U-406. Furthermore, as in *Stickley,* it is *undisputed* that Jones was allowed to shower on each of the six days he alleges he was without toilet paper.

Accordingly, the Court concludes that Defendants are entitled to summary judgment on Jones's inhumane conditions of confinement claim regarding the broken toilet and lack of toilet paper, and that claim should be dismissed, with prejudice.

### 2. Use of Full Restraints

Jones alleges that Defendants subjected him to inhumane conditions of confinement by requiring him to be placed in full restraints when he was allowed outside his administrative segregation cell for one hour each day.[7]

---

[7] Jones alleges that: (1) Briggs and Sylvester ordered that he be placed in full restraints; (2) Bennett carried out those orders; (3) Wilson was a member of the Classification Board that periodically reviewed and approved that decision; and (4) Nelson affirmed that decision on appeal.

Importantly, is undisputed that Jones was *not* harmed, in any way, by this limited use of full restraints. *See Smith*, 87 F.3d at 268 (finding no constitutional violation where a prisoner failed to demonstrate that he was actually harmed by the conditions of his confinement); *Seltzer-Bey* v. *Delo,* 66 F.3d 961, 964 (8th Cir. 1995) (same). Similarly, there is no evidence suggesting that Jones was unable to exercise or adequately move about his administrative segregation cell for the twenty-three hours each day that he was *not restrained. See Key v. McKinney*, 176 F.3d 1083, 1085 (8th Cir. 1999) (finding that a prisoner did *not* suffer an objectively serious risk to his health and safety when he was placed in full restraints for twenty-four *consecutive* hours). Thus, the Court concludes that no reasonable juror could find that the limited use of full restraints on Jones was an "extreme deprivation" of the "minimal civilized measure of life's necessities." *Hudson,* 503 U.S. at 9.

Finally, in *Bell v. Wolfish*, 441 U.S. 520, 540 (1979), the Court held that: "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting." Here, it is undisputed that Defendants required Jones to be placed in full restraints whenever he was out of his administrative segregation cell because they believed he was a "ring leader" of a volatile and dangerous situation during which the detainees in S-Unit banded together, disobeyed orders, and ceased their protest only after there was a show of force by the SERT. *See Ferguson v. Cape*

*Girardeau Cnty.*, 88 F.3d 647 (8th Cir. 1996) (confining a pretrial detainee to thirty foot cell, twenty-four hours a day for eleven consecutive days was "reasonably related" to the county's "legitimate governmental objectives" of monitoring "his medical condition as well as general safety concerns"). Further, it is undisputed that Defendants regularly reviewed their decision and lessened Jones's restrictions, by removing the black box, after he demonstrated his ability to obey orders and refrain from creating disturbances.

Accordingly, the Court concludes that Defendants are entitled to summary judgment on Jones's inhumane conditions of confinement claim regarding him being placed in full restraints during the one hour each day he was allowed to be outside his cell, and that claim should be dismissed, with prejudice.

### III.  Conclusion

IT IS THEREFORE RECOMMENDED THAT Defendants' Motion for Summary Judgment *(Doc. 59)* be GRANTED, and that Jones's retaliation and inhumane conditions of confinement claims against Sylvester, Briggs, Bennett, Nelson, and Wilson be DISMISSED, WITH PREJUDICE.[8]

---

[8] Defendants have also raised a qualified immunity defense. Because there is no evidence of a constitutional violation, there is no need for the Court to address qualified immunity as an alternative reason for dismissal. *See Schmidt v. City of Bella Villa,* 557 F.3d 564, 574 (8th Cir. 2009) ("Since we find no constitutional violation, we need not address the issues of qualified immunity and municipal liability"); *Ambrose v. Young*, 474 F.3d 1070, 1077 n.3 (8th Cir. 2007) ("[I]f the court finds no constitutional violation occurred, the analysis ends and the issue of qualified immunity is not addressed").

Dated this 1st day of February, 2018.

_____
UNITED STATES MAGISTRATE JUDGE